

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 17 2019

CLERK U.S. DISTRICT COURT
_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:19-MJ-430 |
| CHARLES LANE (01) a/k/a "LC" | |

## CRIMINAL COMPLAINT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

**Alleged Offense, Possession of Controlled Substance with Intent to Distribute:**

On or about October 9, 2018, in the Northern District of Texas, the defendant, **Charles Lane**, also known as LC, did knowingly and intentionally possess with intent to distribute 50 grams or more of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Probable Cause:**

I, Special Agent M. Wido, under oath, duly state that I am a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). The statements set forth in this affidavit are true and correct to the best of my knowledge and belief, but are not inclusive of all the evidence or information in the case.

1. On or about October 8, 2018, an ATF confidential informant (CI) placed a recorded phone call to **Charles Lane** to confirm a previously negotiated four-ounce methamphetamine transaction scheduled to occur on October 9, 2018. **Lane** confirmed and informed the CI that the methamphetamine would cost $250 per ounce.

Criminal Complaint – Page 1

2. On or about October 9, 2018, the CI drove with an undercover ATF agent (UC) to a home located on Loma Vista Drive in Fort Worth to pick up **Lane** for the methamphetamine transaction. The CI parked, **Lane** came out of the residence, exchanged pleasantries with the UC, and got in to the CI's car.

3. **Lane** instructed the CI to drive to a Home Depot on South Freeway in Fort Worth. As they drove, **Lane** called his methamphetamine supply source and told him they were on their way to the Home Depot. When they arrived at the Home Depot, **Lane** again called his supply source to inform him they had arrived.

4. Once **Lane's** supply source arrived, the UC gave **Lane** $1,000 for the four ounces of methamphetamine. **Lane** took the money, left, and entered the front passenger side of the car to meet with his supply source. **Lane** returned with two small bags containing methamphetamine and informed the UC that his source charged $300 per ounce. The UC weighed the methamphetamine and expressed disappointment in regards to the price and weight of the purchased methamphetamine. **Lane** said it should weigh about three ounces, but the UC expressed his frustration that the deal was to buy four ounces of methamphetamine for $1,000, and this methamphetamine weighed less than three ounces. Nevertheless, the CI drove back to the Loma Vista home with **Lane** and the UC where they then dropped off **Lane**. The transaction was video and audio recorded.

5. The methamphetamine purchased from **Lane** was submitted to the Drug Enforcement Administration laboratory for testing. The testing showed it had a net weight of about 69 grams, was about 97% pure, and contained about 67 grams of pure d-methamphetamine hydrochloride.

Based upon the above facts and circumstances, I respectfully submit there is probable cause to believe that **Lane** possessed 50 grams or more of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

_____
M. Wido
Special Agent
ATF

SWORN AND SUBSCRIBED before me, on this 17TH day of May, 2019, at 10:01 am, in Fort Worth, Texas.

_____
HAL R. RAY, JR.
United States Magistrate Judge